Good morning your honors. I'll take two minutes for rebuttal. My name is Saad Ahmed and I represent the petitioner in this case who's seeking review of the Board of Immigration Appeals final order of removal denying his applications for asylum and withholding of removal on the basis of the so-called persecutor bar. This petition for review should be granted because there was insufficient evidence in the record to raise the inference that the petitioner was a in the context of a persecutor bar analysis the government must first make the threshold evidentiary showing that each element of the persecutor bar has has been met or could be met. In this case the the the evidence failed to establish that. The government relied primarily on the asylum interview notes as well as the assessment to refer to make its initial evidentiary burden and the asylum officer's notes were not meaningfully clear or reliable to raise the inference and we believe that. So he was testifying, right, Mr. Pantos, was testifying and refreshing his recollection and reading out loud the notes and I thought that Mr. Dahri's counsel went along with that ultimately agreed. Your Honor, his counsel went along with it because on the day of the cross-examination the government had not submitted a written a written summary of the the asylum officer's notes as they had said previously. The counsel went along with it for that reason. However, even the testimony of the asylum officer was vague at best. It was too generalized. For example, the asylum officer said when he was when he questioned the petitioner whether he ever was in the police, the answer was yes, but the work of the party supported the police. When the asylum officer asked the petitioner whether he ever ordered whether he whether he ever ordered anybody arrested, the answer was my rank was much higher than the police. When he was asked questions about So I guess let me just make it to make it clear that two questions. One is, was the Mr. Pantos's testimony admissible? Was it and and we have the evidence that we have a lower standard for the immigration hearing. It's not like a trial court, so it's relevant, reliable, indicia of reliability. The second question, which you seem to be moving to now, is, was it sufficient to be substantial evidence of of the persecutor bar? Am I understanding your argument correctly? That's correct, Your Honor. That's correct. We believe that. Okay. And on the second question, do you agree, I think we got a 28-J letter about the matter of D.R., which is looking at a different statute, but words that also appear in the persecutor bar language, do you agree that that's the standard we would look at now? No, Your Honor. I think the standard that we have to look at would be the same standard this Court applied in the persecutor bar cases in the past. Okay. So what's your reasoning why matter of D.R. is not applicable? Well, Your Honor, they were dealing with a separate issue. They were dealing with they were dealing with an inadmissibility issue where the alien did not disclose his prior service in the military. I mean, that was, yes, we agree in that case materiality was the issue, whether that was a material misrepresentation. But they go on in matter of D.R. to discuss assisted or otherwise participated in, which is the same language as the persecutor bar, though it's in acts of extra judicial killing. And they included a footnote saying the same thing applies in to the persecutor bar. Well, Your Honor, they said that they respectfully disagreed with this Court's analysis in Maldonado, I believe, where the Court said that there has to be a more tight fit. There has to be a nexus between the persecution, the acts of persecution, and the, you know, and the harm or the resulting harm. I think that either way, even under the new standard in D.R., I believe that the asylum officer's notes and the assessment to refer did not provide enough evidence to raise the inference. And we believe that it's clear there were so many holes in this testimony. In general, most of the – I mean, for example, it says the asylum officer testified that the – that the Petitioner testified that he guided, but he doesn't – it doesn't even explain what guidance means. It doesn't even explain in what context. A lot of the answers that the Petitioner talked about were general question – general answers, like, yes, we know both North Yemen and South Yemen, both of them persecuted. It doesn't really address the clear cut. In many asylum cases where the persecutor bar is raised, there's a lot more evidence than what was presented in this case. And, Your Honor, even if this Court were to conclude that the government made the threshold evidentiary showing in this case, even then, substantial evidence does not support the immigration judge's adverse credibility determination with respect to the persecutor bar here. For starters, the immigration judge mischaracterized the evidence. He kept saying that the Petitioner was the Secretary General of the Yemen Socialist Party, whereas there's no evidence that he testified to that. He kept saying that the Petitioner was, you know, was a member of the Communist Party, whereas there's no such thing as a Communist Party in Yemen. So he has that, actually, on his asylum application. I'm a member of the Yemen Socialist Party and the Yemen Communist Party. And then he testifies that they're the same, at one point, that they're the same thing. Well, Your Honor, he testified. First of all, the record is clear. There was no Communist Party in either North or South Yemen. So that must have been a typo. And he explained all of that. But he testified that there were similarities between the Communist Party and the Socialist Party. But he also said that it's not the same Communist Party that existed in the Soviet Union. And so we believe that that was, you know, that was the answer. The thing in this case is, Your Honor, that there was too much weight given to the asylum officer's notes, despite their unreliability, and too little weight given to the Petitioner's statements and testimony, and the other evidence in the record. So we believe that the inference of the persecutor bar was not raised or was not shifted to the Petitioner to begin with. If the burden hadn't shifted to the Petitioner, then his testimony that the judge found not credible would not have satisfied the persecutor bar standard. Your Honor, we hope that the Court would look at the record as a whole in coming to the conclusion that the persecutor bar in this case did not apply. Okay. Do you want to say the remainder of your time, Your Honor? Yes, Your Honor. Rebuttal? Yes, Your Honor. Thank you. Excuse me. Good morning, Your Honors. Jeffrey L. Mencken, United States Department of Justice, for the Attorney General. Turning to the point that counsel opened with about the evidence indicating, Mr. Aldari's admissions in his asylum interview most certainly crossed the very low threshold of indicating that he assisted in persecution. And I can go through at least eight or nine things that he said during that, that did so, from saying that he sometimes ordered the arrests of opposition party members, that he guided interrogations a few times, during which the suspects were physically hurt. He said that we interrogated political opponents, but then said it wasn't his main function. His attorney asked, does that mean that you persecuted? And he said, well, they did and we did, too. He talked about methods of interrogations were known, including physical hurting, and Yemen is known for that. He said both sides used the same methods. Methods of torture available were used. And I can go on. He said that as far as guiding, he said it was part of a natural process, his words, that he would take the results of one interrogation and then decide who should be arrested next. So he orders arrests and interrogations, and that gets him in the box. That puts the burden on him to show that he was not subject to the persecutor bar. As far as the asylum officer's notes, as Your Honor pointed out, he testified, he was questioned, whether defense counsel agreed to that procedure, where there were questions, they went through line by line. He had every opportunity to ask any question he wished. There's no showing of what he would have done had some other procedure been followed and so on. What that means, then, is that the case wasn't the case. That process basically complied with our case law, correct? Yes, it did. Right? Yes, it did. You said that the I.J. just can't rely on the notes by themselves. No, that's exactly the case law. The notes weren't turned in. He was there. The officer testified. Mr. Aldari was represented. He had an interpreter of his own choosing. He had an opportunity to give a closing statement. He had an opportunity to testify after the officer testified and to give his account, which he more or less tried to do. So there was another basis that the I.J. gave and the BIA upheld, and that was the adverse credibility determination? Yes. That's really what I think the case turns on. Because the admissions during the interview get him in the persecutor bar. Then it turns on whether his denials that he ever said any of that stuff or he ever did any of that stuff was credible. And I think the agency's decision that there's no record evidence that compels reversal of the agency's decision that he failed to meet his burden there. Specific inconsistencies were identified. The very premise of his asylum claim was, I was a high-ranking officer in the Yemeni government, the Socialist Party, and he did say the Communist Party twice. And because of that, I am going to be persecuted. The asylum officer then finds him subject to the persecutor bar. And so, of course, when he comes into immigration court, his story changes. And this is not unusual. I wasn't that important. I had no authority. Nobody followed my order. I just did political things. And then he never quite identifies what political things are. So it really comes down to, I'll be persecuted because of my high authority in immigration court. I had no authority. I didn't persecute anybody. So the retrenchment was quite obvious. And I think the agency justifiably found it incredible. What about the bias issue? Some of the comments made by the I.J. I don't think there's anything to that, Your Honor. Hitler and the other. Let's put that one in context. The immigration judge ruled against Mr. Aldari. There was then a remand for additional findings. So when Mr. Aldari testifies about two or three years later, after the immigration  using a very demonstrative gesture that the immigration judge characterized as a salute like we would see in newsreels. Do you think that's what it was intended to be, or? Well, it happened twice. The second time it happened, the I.J. asked, what's that about? I think he's entitled to do that. I think any judge would want to know if someone is being, is sassing the court, frankly. And Mr. Aldari's. Counterproductive, isn't it? Well, I don't know. But he, the I.J. asked him to explain. He explained I didn't mean anything by it, and they moved on. He didn't, he wasn't ruled against because he, the I.J. thought he was Hitler. That's hardly anything that happened. It's a way of describing for the record a gesture that I will, if you don't mind, won't reproduce. Sort of a dramatic way of describing it. We all understand what the gesture was. Nobody, there was no denial that he made the gesture. It's one incident in a proceeding that went on arguably far too long. So that, to say that that had any color on the decision I don't think is supported by the record. As far as any other allegations of bias, there's no incident, there's no showing of prejudice. I don't know what else Your Honor would be referring to. But there's no showing, according to the Court's standards in Vargas, of deep-seated favoritism or antagonism that would make fair judgment impossible. Scalia, he called him a communist, no? Well, that's part of his, first of all, it's in his asylum application twice. I was a member of the Communist Party. He then admits during examination that the Communist Party was sort of the same thing. They had the same ideals. He says, I was sent to Moscow, which is something only high party officials got to do. And then when he was cross-examined after a one-month recess, he took that one back too. He said, oh, no, anybody could go. So it's a question of, he says, I'm a high official, I'm a highly placed official, that's why I'm going to be persecuted, and then he runs away from it when he gets in trouble with it. So I think that's where that element came in. Obviously, there's no notion that the I.J. ruled against him because he was a communist. I don't think the record would support that finding. It certainly wouldn't compel it. So there, in the course of a long proceeding, things are said, but there's no showing of bias here. And the Board's finding is amply, I think, supported. And more to the point, there's no record evidence that would compel a contrary determination. And just for one other thing, I don't think the record's clear at all that there is no Communist Party in Yemen, but that's an entirely different matter. So really, the threshold is crossed. The burden is on Mr. Aldari. He didn't meet that burden. It turns – that turns largely on the credibility issue. No evidence, record evidence, would compel a finding that he was indeed credible. I think our briefs address the remaining issues, unless the Court has anything you'd like me to do. Robertson, Thank you. Roberts, All right. Thank you, Your Honor. Your Honors, in this case, the asylum officer notes and the assessment to refer were highly unreliable. The Petitioner does not contend that the asylum officer was lying about anything. Petitioner only is indicating that the evidence was highly unreliable, interpreter was used, and this Court has regularly reversed cases on adverse credibility determination when interpreters were used because of interpretation issues. In this case, let me just give you an example. In the assessment to refer, the officer said that the Petitioner was a credible witness, and he said the Petitioner testified that he never harmed anybody. In the very next page of the assessment to refer, he said that the Petitioner was involved in two cases where he was physically present, where people were harmed, and he was the interrogator. These are inconsistent statements. How do you reconcile that? I can point the Court, exhibit the administrative record, 899 and 890. And on both, if you can see, that that's just one example. When Officer Pantos was questioned in court on cross-examination, he was asked, where did it say in those notes that he was present at two interrogations when people were physically harmed? He said, well, those notes were not verbatim, and a lot of things are not that he stated in the assessment notice were not in the notes. Whenever the Court looks at the credibility of the asylum officer notes, they make sure that it's a meaningfully clear and credible and reliable summary of what transpired. I've never seen an asylum case where the notes were so unreliable, yet the judge relied on them so heavily in making both the government's evidentiary burden issue as well as the adverse credibility. Were they cases where the officer was testifying in the hearing, in the proceedings? I'm not aware of any case where he was. But even with Officer Pantos being in court, he was unable to answer or resolve discrepancies or contradictions when on cross-examination. In fact, this was a case where the testimony officer took place almost 10 years after the asylum notes. He had no recollection of what transpired independent of the notes that were in the record. And for that reason, Your Honor, we believe that the government did not meet its burden that the petitioner was a persecutor. Okay. Thank you, counsel. Thank you. We appreciate your arguments on this case. The matter is submitted, and thank you very much.
judges: Paez, Ikuta, Adelman